UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RANDY SOWELL, and D.D.S.S., <br><br> Plaintiffs, <br><br> -against- <br><br> NYSDOCCS ANTHONY J. ANNUCCI, et al., <br><br> Defendants. | 22-CV-6538 (LTS) <br><br> ORDER |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Randy Sowell, who is currently incarcerated at the Vernon C. Bain Center (VCBC) on Rikers Island, filed this *pro se* action under 42 U.S.C. § 1983 on behalf of himself and his minor daughter, D.D.S.S. He alleged that Defendants violated his rights by refusing to discharge him from parole, and appeared to assert that he was housed at a Rikers Island facility with a prisoner who had an order of protection against him. On January 13, 2023, the Court directed Plaintiff to amend his complaint within 60 days, to address deficiencies in his pleadings.

Plaintiff filed an amended complaint on February 13, 2023, which the Court has reviewed. For the reasons set forth below, the Court: (1) severs Plaintiff's unrelated claims from this action; (2) directs the Clerk of Court to transfer the claims arising from events that allegedly occurred in New Jersey to the United States District Court for the District of New Jersey; and (3) directs the Clerk of Court to open three new actions for the remaining severed claims.

## BACKGROUND

The Court assumes familiarity with the underlying facts of this case, as summarized in the Court's January 13, 2023, order. Plaintiff sued: (1) the Commissioner of New York City Police Department (NYPD); (2) Anthony J. Annucci, the Acting Commissioner of the New York State Department of Corrections and Community Supervision (DOCCS); (3) Cynthia Brann, the

former Commissioner of the New York City Department of Correction (DOC);[1] (4) Phil Murphy, the Governor of the State of New Jersey; (5) Letitia James, the Attorney General of the State of New York; (6) Parole Officer (P.O.) Stephanie Simon; (7) Senior Parole Officer (S.P.O.) Hubert Brown; (8) Elizabeth Hayden;  (9) Sharon Lynch; and (10) the Legal Aid Society. Plaintiff sought relief and damages stemming from his detention on Rikers Island.

In the original complaint, Plaintiff asserted that in September 2019, after he was arrested in Cape May, New Jersey, he was extradited to New York and detained at a Rikers Island facility because a parole violation warrant had been lodged against him. Because of his detention on Rikers Island, he missed his court date for a New Jersey criminal matter. In December 2019, when Plaintiff was released from New York State custody to post-release supervision, he informed parole officers of his pending New Jersey criminal matter, and they told him not to worry about it because he was restricted from traveling out of New York State as part of the conditions of his parole. Over the next couple of months, Plaintiff cycled in and out of DOC custody, where he was assaulted at multiple DOC facilities. He contended that DOCCS refused to discharge him from parole in accordance with New York State's Less Is More Act, and appeared to allege that he was housed on Rikers Island with Jonathan Luna, a person who had procured an order of protection from a state court against Plaintiff. Plaintiff also alleged that, as a result of Defendants' actions, he was separated from his minor daughter.

In the January 13, 2023, order, the Court determined that: (1) Plaintiff did not state an Eighth Amendment prolonged detention claim – that he was held beyond his mandated release

---

[1] The Court noted in the January 13, 2023, order that Louis Molina has been the DOC Commissioner since January 1, 2022, and that he would have been the Commissioner during some of the dates during which Plaintiff asserted that he was detained at a Rikers Island facility, such as the VCBC. (ECF 6, at 3.)

date – because he had not provided specific facts about the dates of his incarceration, the date he should have been released, and the reasons he was entitled to be released; and (2) Plaintiff did not allege facts suggesting a false imprisonment claim, specifically, that parole or correction officials lacked probable or reasonable cause for his continued detention at Rikers Island. The Court granted Plaintiff 60 days' leave to amend his complaint to allege additional facts suggesting a valid claim of prolonged detention beyond his mandated release date or a valid claim of false imprisonment.

In the amended complaint, Plaintiff sues three of the defendants from the original complaint and seventeen new defendants: (1) Acting Commissioner Annucci; (2) former Commissioner Brann; (3) S.P.O. Brown; (4) Eric Shenkus, (5) Megan Donnovan, and (6) Kathrin S. Weigel – attorneys from Cape May Public Defender Office; (7) Emily Buonadonna, an assistant prosecutor from the Cape May Prosecutors Office; (8) the Cape May Courthouse; (9) the New York City Department of Homeless Services (DHS); (10) Captain Kelly, (11) Officer Guzman, (12) Deputy Warden Harvey, (13) Officer Caruso, (14) Captain Smart, and (15) Deputy Warden Leiter – correction officials assigned to Rikers Island; (16) DOC; (17) DOCCS; (18) the NYPD; (19) "Public Assistance Office 14th Street"; and (20) the New York City Housing Authority Albany Houses.

Plaintiff makes the following assertions in the amended complaint. Following his extradition from New Jersey in September 2019, he was "illegally confined" at a Rikers Island facility for about 90 days due to the parole violation charges, and was released via a writ of *habeas corpu*s issued by the New York Supreme Court, Bronx County. (ECF 8 ¶¶ 6-7.)[2] In

---

[2] The Court quotes from the amended complaint verbatim. Unless otherwise indicated, all grammar, spelling, punctuation, and emphasis are as in the original.

December 2019, Plaintiff's parole was reinstated, and he was released from DOC custody. He reported to DOCCS's "Queens Area II Parole Office," and informed P.O. Simeon[3] and S.P.O. Brown of the New Jersey warrant, but they told him not to worry about it because he could not leave the New York City area because of the conditions of his parole. P.O. Simeon also "forced" Plaintiff to reside at the Bellevue Men's Shelter. (*Id*. ¶ 13.)

At the shelter, Plaintiff had various issues with the shelter's staff and DHS Police. After submitting complaints, Plaintiff was assaulted and pepper sprayed by the shelter's staff and DHS police, and a supervisor falsely accused Plaintiff of threatening her. Plaintiff asserts that he was banned from Bellevue Men's Shelter, and therefore resorted to sleeping at a bank in midtown Manhattan, "where [h]e became addicted to K2 and Crystal Methamphetimines during the height of the COVID-19 pandemic." (*Id*. ¶ 15.)

In March 2020, the NYPD arrested Plaintiff for possession of marijuana and synthetic cannabinoids, which prevented him from reporting to his parole officer. In August 2020, Plaintiff was again arrested, this time for an assault involving Jonathan Luna at a shelter and because a parole warrant had been issued for his arrest.[4] Although Plaintiff should have been released from DOC custody on December 24, 2020, he was "maliciously held on a New Jersey [b]ench [w]arrant by Deputy Warden Harvey, at the direction of Captain Kelly and Officer Guzman," and remained detained in a Rikers Island facility until January 25, 2021, "in retaliation [for] a

---

[3] In the original complaint, Plaintiff identified his parole officer as Stephanie Simon and he named her as a defendant. He now indicates that her last name is Simeon, and he does not name her as a defendant in the amended complaint.

[4] In the original complaint, Plaintiff seemingly asserted that the incident involving Luna occurred on Rikers Island. He now makes it clear that the incident with Luna occurred at Blake House, a shelter operated by the Salvation Army, in 2020, and he was arrested for assault on Luna. Plaintiff also alleges that the New York Supreme Court, New York County, issued an order of protection to Luna with respect to Plaintiff. (ECF 8, ¶ 23.)

4

previous complaint filed in this same court."⁵ (*Id*. ¶ 17.) Plaintiff also raises several conditions of confinement claims arising while he was in DOC custody from August 2020, through January 2021, including claims of assaults, deprivation of basic needs and services, and exposure to the COVID-19 virus. (*See id*. ¶ 18.)

Following Plaintiff's release from DOC custody in January 2021, he was forced to participate in an "illegal [e]xtradition" hearing at the New York Supreme Court, Queens County. (*Id*. ¶ 19.) Plaintiff later reported to the Queens Area II Parole Office, but parole officials did not give him permission to go to New Jersey to take care of the pending Cape May criminal matter. Because of the problems he had encountered at the shelters, Plaintiff was forced to sleep at a TD Bank branch office on Park Avenue in Manhattan.⁶

On July 27, 2021, Plaintiff was arrested and detained because a parole violation warrant had been issued for his arrest, and he was "held past the statutory guidelines required for parole hearings." (*Id*. ¶ 24.) While detained at Rikers Island facility, he was assaulted, his property was taken, correction officers incited other inmates to harm him, and he was deprived of medical care. (*Id*. ¶ 25.) Plaintiff does not assert when he was released from custody.

On February 16, 2022, after Plaintiff was arrested by the NYPD in Brooklyn, he was again detained at a Rikers Island facility, where correction officers confiscated his property,

---

⁵ Plaintiff repeatedly refers to a prior action that he filed in this court. A review of the court's records reveals that in 2020, Plaintiff filed an action under 42 U.S.C. § 1983 in which he asserted claims of excessive force, failure to protect, unconstitutional conditions of confinement, and due process violations against Captains Kelly and Moreno, Correction Officer Guzman, and Deputy Warden Mitchel. *See Sowell v. Kelly*, ECF 1:20-CV-11049, 2 (S.D.N.Y. Feb. 8, 2021). On February 8, 2021, that action was dismissed because Plaintiff did not file an updated prisoner authorization or pay the fees to bring that action. *See id.*, ECF 6.

⁶ Plaintiff asserts that in February 2021, because of issues arising from the incidents that occurred at Blake House in 2020, he again ended up sleeping on the streets. He claims that he suffered unspecified retaliatory acts at the Hong Kong Station Hotel, operated by Bronx Works, for his filing of complaints against the staff at Blake House. (*See* ECF 8 ¶ 23.)

5

including his religious necklace, and placed him in unconstitutional conditions of confinement in retaliation for complaints he had previously filed against correction staff. Although Plaintiff was scheduled to be discharged from parole in March 2022, his parole was revoked. Plaintiff contends that he should have been discharged from parole under the Less is More Act. He was later released from incarceration but was still subject to parole conditions.

After Plaintiff was released from incarceration, he did not report to his parole officer because he believed he had completed parole, was suffering from mental health issues, and feared that he would be arrested for a parole violation based on the New Jersey fugitive warrant being issued for his arrest. On May 19, 2022, the NYPD arrested Plaintiff for criminal mischief and trespassing arising from an incident that occurred on May 6, 2022, at the Public Assistance Office on 14th Street in Manhattan. Plaintiff claims that staff at that office refused to give him "benefits for storage of his property, which the Human Resources Administration had authorized. (*Id*. ¶ 32). After his arrest, police officers assaulted Plaintiff at Central Booking.

In June 2022, Plaintiff's attorney in his criminal matter, Elizabeth Hayden of the Legal Aid Society, filed a state court *habeas* petition, which was granted on June 15, 2022. DOCCS, however, refused to lift the parole warrant until August 2022.[7] Although Plaintiff's parole has been discharged, he remains incarcerated due to the charges arising from his May 19, 2022, arrest.[8] The New Jersey criminal matter also remains pending and the State of New Jersey has lodged "an illegal Governor's warrant" against Plaintiff. (*Id*. ¶ 33.)

---

[7] Plaintiff does not provide any other information about his state-court *habeas* petition. It is unclear from his assertions whether the petition addressed a parole warrant that was issued following Plaintiff's February 16, 2022, arrest in Brooklyn, New York.

[8] According to public records maintained by the New York State Unified Court System, Plaintiff has a criminal case stemming from his May 19, 2022, arrest pending before the New York Supreme Court, New York County. *See People v. Sowell*, No. IND-73005-22 (Sup. Ct. N.Y.

6

Plaintiff asserts that he has been separated from his daughter as a result of the alleged violations. He also claims that his daughter has been subjected to homelessness because of the New York City Housing Authority's failure to fix problems in her mother's apartment. Plaintiff seeks immediate release from custody, expungement of all criminal matters and convictions since his release from state prison in 2018, retroactive repeal of his post-release supervision, termination of the employment of all individuals involved in the alleged violations, and money damages.

## DISCUSSION

In an apparent attempt to clarify some of the discrepancies the Court noted in the January 13, 2023, order, Plaintiff brings multiple unrelated claims stemming from his New Jersey arrest and his experiences in DOC custody and the New York City shelter system from 2018 through 2022. Plaintiff's assertions in the amended complaint can be sorted into five sets of claims: (1) claims arising out of his New Jersey arrest and criminal proceedings; (2) claims relating to his alleged multiple unlawful detentions at Rikers Island facilities based on parole-violation charges, the revocation of his parole, parole officials' failure to give him permission to go to New Jersey for his criminal proceedings there, and his parole officer's "forcing" him to stay at Bellevue Men's Shelter; (3) claims against DOC correction staff for allegedly unlawful conditions of confinement, including claims of assaults, violation of religious rights, denial of medical care, deprivation of basic needs and services, exposure to the COVID-19 virus, and retaliatory actions against him while he was in DOC custody; (4) claims against shelter staff and DHS police for allegedly violating his rights at various shelters; and (5) claims against the NYPD and the Public

---

Cnty.); *People v. Sowell*, No. SCR-74841-22 (Sup. Ct. N.Y. Cnty.). Plaintiff's next court date is June 22, 2023.

7

Assistance Office arising out of the May 6, 2022, incident, as well as Plaintiff's May 19, 2022, arrest and resulting detention.[9]

Rule 20(a)(2) of the Federal Rules of Civil Procedure permits a plaintiff to join multiple defendants in one action if: (A) any right to relief is asserted against them jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions . . . ; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R, Civ. P. 20(a)(2). Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Products Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1126-27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever a claim, the court considers "the two requirements of Rule 20 and additional factors, including (1) whether severance will

---

[9] Plaintiff asserts that, on February 16, 2022, the NYPD illegally stopped and frisked him in Brooklyn, and then arrested him. Because Plaintiff does not provide any other information about this arrest, the Court does not delineate it as one of the distinct set of claims described above. Should Plaintiff wish to pursue a false-arrest claim based on this incident, he can submit a new separate complaint in the appropriate court, detailing the false-arrest claim. He must name as defendants the persons who falsely arrested him, and provide facts suggesting that he was arrested without probable cause. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted).

Further, Plaintiff should note that venue is generally not proper in this court in connection with events occurring in Brooklyn, New York. *See* 28 U.S.C. § 1391; 28 U.S.C. § 112(c) (Brooklyn, which is located in Kings County, New York, falls within the Eastern District of New York).

serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845, 2007 WL 2826649, at *8 (SD.N.Y. Aug. 31, 2007)). More generally, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Here, Plaintiff brings claims arising from separate events and involving different defendants. The claims neither arise out of the same transaction nor raise any common questions of law or fact. Plaintiff's allegations that multiple defendants harmed him in separate incidents are insufficient to join all of his claims in a single action. *Deskovic*, 673 F. Supp. 2d at 167. Joinder of these unrelated matters thus does not comport with Rule 20(a).

Moreover, severance of Plaintiff's claims will not prejudice him because the five sets of claims can be considered in separate actions and he will have an opportunity to litigate those claims.[10] *See, e.g.*, *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("Where certain claims are properly severed, the result is that there are then two or more separate 'actions.'") (citation omitted). There is also no prejudice to defendants in having these unrelated claims

---

[10] Plaintiff will be responsible for paying the fees or seeking *in forma pauperis* status for each new separate severed civil action.

proceed separately. For these reasons, the Court severs four of Plaintiff's five sets of claims from this action.[11]

### A.    Sever and transfer claims arising in New Jersey

The Court severs from this action Plaintiff's claims arising out of his New Jersey arrest and criminal proceedings, for which he names Eric Shenkus, Megan Donnovan, Kathrin S. Weigel, Emily Buonadonna, and the Cape May Courthouse as defendants. For the following reasons, the Court transfers those claims to the United States District Court for the District of New Jersey.

Under 28 U.S.C. § 1391(b), a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the judicial district where the person is domiciled, and an "entity with the capacity to sue and be sued," if a defendant, resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(1), (2).

Plaintiff, who is currently detained at VCBC on Rikers Island, sues his defense attorneys, a prosecutor, and the Cape May Courthouse for allegedly unlawful actions taken against him in

---

[11] The Court notes that most of Plaintiff's new claims are beyond the scope of the original lawsuit and the permitted amendment. *See, e.g.*, *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."); *Grimes v. Fremont General Corp.*, 933 F. Supp. 2d 584, 597 (S.D.N.Y. 2013) (citing cases). In light of Plaintiff's *pro se* status, however, the Court severs those claims rather than dismissing them.

New Jersey. He does not plead the residence of any of these defendants, only asserting that the alleged events giving rise to his claims occurred in Cape May County, New Jersey, which is within the federal judicial district of the District of New Jersey. *See* 28 U.S.C. § 110. Because Plaintiff's Cape May County arrest and criminal proceedings took place outside of the Southern District of New York, venue for his claims arising from those alleged events is not proper in this court under Section 1391(b)(2). As the events underlying those claims occurred in New Jersey, under Section 1391(b)(2), the District of New Jersey is the proper venue for any claims Plaintiff may have arising from those events. Under 28 U.S.C. § 1406, if a plaintiff files a case in the wrong venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Under Rule 21, the Court hereby severs Plaintiff's claims arising from events that allegedly occurred in New Jersey, and transfers those claims to the District of New Jersey under Section 1406(a).

**B.      Sever and open new actions for remaining unrelated claims**

The Court also severs from this action the following unrelated claims, and directs the Clerk of Court to open those severed claims into three separate new civil actions. The three sets of claims to be severed are:

(1) Plaintiff's claims against DOC correction staff for allegedly unlawful conditions of confinement and retaliatory acts at DOC's facilities, in which Plaintiff names Captain Kelly, Officer Guzman, Deputy Warden Harvey, Officer Caruso, Captain Smart, Deputy Warden Leiter, and DOC as defendants;

(2) Plaintiff's claims against shelter staff and DHS police for allegedly violating his rights at various shelters, in which Plaintiff names DHS as a defendant; and

(3) Plaintiff's claims arising out of the May 6, 2022, incident, and Plaintiff's May 19, 2022, arrest and resulting detention, in which Plaintiff names the NYPD and the Public Assistance Office 14th Street as defendants.

The present action will proceed only with Plaintiff's claims relating to his parole, parole revocation, and allegedly unlawful detentions pursuant to the parole warrants, and those claims he seeks to bring on behalf of D.D.S.S. The remaining defendants in the present action are Anthony Annucci, Cynthia Brann, Hubert Brown, DOCCS, DOC, and the New York City Housing Authority Albany Houses.[12]

## CONCLUSION

The Court severs, under Rule 21 of the Federal Rules of Civil Procedure, Plaintiff's unrelated claims from this action. The Clerk of Court is directed to transfer Plaintiff's claims against Eric Shenkus, Megan Donnovan, Kathrin S. Weigel, Emily Buonadonna, and the Cape May Courthouse to the United States District Court for the District of New Jersey under 28 U.S.C. § 1406(a). The Clerk of Court is also directed to open three new separate civil actions naming the following defendants, respectively: (1) Captain Kelly, Officer Guzman, Deputy Warden Harvey, Officer Caruso, Captain Smart, Deputy Warden Leiter, and the New York City Department of Correction; (2) the New York City Department of Homeless Services; and (3) the New York City Police Department and the Public Assistance Office 14th Street. The present action will proceed only against Anthony Annucci, Cynthia Brann, Hubert Brown, the New York State Department of Corrections and Community Supervision, the New York City Department of Correction, and the New York City Housing Authority Albany Houses.

---

[12] Because Plaintiff appears to bring claims against DOC with respect to his parole and his conditions of confinement, DOC will remain a defendant in this action but will also be named as a defendant in one of the new severed actions.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: June 22, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge